IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CLARENCE REDMOND LOGUE, | CV 19-101-M-BMM-JTJ |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| JENNIFER ROOT; C.D.O. COOPER; TAMMY BOWEN; LIZ FISHER; and MICHAEL BUCKLEY, | |
| Defendants. | |

The following motions are pending:  (1) Defendants' Motion for Summary Judgment (Doc. 40); (2) Mr. Logue's Motion for Summary Judgment (Doc. 48); (3) Defendants' Motion to Stay (Doc. 53); (4) Mr. Logue's Motion for Leave to File an Amended Complaint (Doc. 56); (5) Mr. Logue's Motion for Subpoenas (Doc. 57); (6) Mr. Logue's Motion for Supplemental Jurisdiction of Montana's Eleventh Judicial District Court (Doc. 58); (7) Defendants' Motion for Telephonic Status Conference (Doc. 61); (8) Mr. Logue's Motion for Subpoenas (Doc. 63); (9) Mr. Logue's Motion to Oppose any Claims by Defendants of Immunity Defense(s) (Doc. 68); (10) Defendants' Motion to Strike "Plaintiff Clarence Louges's Response to Defendant's Reply Brief in Support of Motion to Oppose Defendant's Motion for summary Judgment Plaintiff's Reply Brief" (Doc. 72); (11) Mr. Logue's Motion for a Subpoena for Particular Records from Flathead County

1

Detention Center (Doc. 75); and (12) Mr. Logue's Motion for Leave to Submit Statement to the Court and to File Extra-Rule Brief (Doc. 80).

The Court recommends that Defendants' Motion for Summary Judgment be denied. Defendants have now filed a response to Mr. Logue's Motion for Summary Judgment, therefore, Defendants' Motion to Stay and Motion for Conference will be denied as moot. Mr. Logue's Motions for Subpoenas, Motion for Supplemental Jurisdiction, and Motion for Leave to Submit Statement to the Court and to File Extra-Rule Brief will also be denied. The Court will reserve ruling on Mr. Logue's Motion for Summary Judgment.

## I. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[1]

### A. Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The party moving for summary judgment has the initial burden of showing there is no genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If the moving party makes a prima facie showing that summary judgment is appropriate, the burden shifts to the opposing party to show the existence of a genuine issue of material fact. *Id.* On summary judgment, all inferences should be

---

[1]Although Mr. Logue's sur-reply (Doc. 60) has not been cited in the Court's analysis of Defendants' Motion for Summary Judgment, out of an abundance of caution, the Court will deny Defendants' motion to strike the sur-reply (Doc. 72).

drawn in the light most favorable to the party opposing summary judgment.  *Id.* at 159.

By notice provided on September 25, 2019 (Doc. 44), Mr. Logue was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998)(en banc); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**B.  Claims at Issue**

The only claim not recommended for dismissal is Mr. Logue's allegation that he was deprived of property without due process of law, in violation of the Fourteenth Amendment of the United States Constitution.  Specifically, he alleges that on or about December 5, 2017 and January 25, 2018 money was taken from his inmate account to cover outside jail medical costs for his pre-existing medical conditions.

In his Complaint, Mr. Logue alleged he was arrested on June 11, 2017 and incarcerated at the Flathead County Detention Center (FCDC).  On June 12, 2017, he was transported to the North Valley Hospital to be seen for an issue with his liver.  Defendants contend this was a preexisting medical condition because at the hospital Mr. Logue complained of prior liver failure.  He was released from custody on July 7, 2017.  (Complaint, Doc. 2 at 7.)

Mr. Logue was again arrested on October 31, 2017 and incarcerated at FCDC. Mr. Logue had his bank send his social security benefit funds to his FCDC trust account. On December 5, 2017, he alleges $174.10 or more was removed from his account without notice. He claims he filed a grievance at a formal level and "believe I appealed their response." (Complaint, Doc. 2 at 7.)

On January 25, 2018, $1079.82 was removed from his trust account without notice. He alleges he grieved and "appealed this issue to the best of my knowledge." FCDC responded by saying they would replace the funds if his insurance paid the bill. Mr. Logue does not know if his formal grievance was completed because he was released 12 days later on February 6, 2018. (Complaint, Doc. 2 at 7.)

### C.  Undisputed Facts

Relative to the claims asserted in this lawsuit, Mr. Logue was incarcerated at FCDC from June 11, 2017 to July 7, 2017 and from October 31, 2017 to February 6, 2018. (Defendants' Statement of Undisputed Facts, Doc. 42 at ¶ 11, undisputed.) At all times relevant to Mr. Logue's claims at issue herein, FCDC had a three-level grievance process which was posted throughout the Detention Center. The electronic kiosk machines, which were used by Mr. Logue to file his grievances, utilized the three-step grievance process. The hard-copy Inmate Grievance Forms during Mr. Logue's incarceration also set forth the three levels

4

and time limits of the grievance process. All FCDC inmates, including Mr. Logue, had access to the three-step FCDC grievance process and Inmate Grievance Forms. (Defendants' Statement of Undisputed Facts, Doc. 42 at ¶ 4.)

Inmates can access Inmate Grievance Forms through the electronic kiosk machines available in each pod, as well as by using blank Inmate Grievance Forms in hard-copy form. (Defendants' Statement of Undisputed Facts, Doc. 42 at ¶ 5, undisputed.) Inmates have the right to file grievances when they have a question or complaint regarding custody treatment, medical treatment, Detention Center policies and procedures, or other related matters that affect the inmate directly. (Defendants' Statement of Undisputed Facts, Doc. 42 at ¶ 6, undisputed.)

All three steps of the FCDC grievance process must be completed in order to exhaust the grievance process. (Defendants' Statement of Undisputed Facts, Doc. 42 at ¶ 7.) Inmates' grievances are stored in their Securus account, or, if they filed a written Inmate Grievance Form, in the inmate's file and Chief Cooper's file. (Defendants' Statement of Undisputed Facts, Doc. 42 at ¶ 8, undisputed.)

The FCDC grievance process is as follows:

a. The grievant has five days after the occurrence of any specific incident in which to file a grievance. A policy grievance may be filed at any time. The inmate shall complete an Inmate Grievance Form and submit it to a Shift

Supervisor.  This is considered Level One of the FCDC grievance process.
(Defendants' Statement of Undisputed Facts, Doc. 42 at ¶ 10.)

b. The grievance will be discussed between the Shift Supervisor and inmate
to assess the problem and attempt to find a possible resolution.  The Shift
Supervisor must respond in writing to an inmate's Level One grievance within five
days.  If the inmate is not satisfied with the response from the Shift Supervisor, the
inmate is directed to proceed to Level Two, which is an appeal to the Chief
Detention Officer.  (Defendants' Statement of Undisputed Facts, Doc. 42 at ¶ 10.)

c. The grievance will be discussed between the Chief Detention Officer and
the inmate to assess the problem and to attempt to find a possible resolution.  The
Chief Detention Officer must respond in writing to an inmate's Level Two
grievance within 10 days (excluding weekends and holidays).  If the inmate is not
satisfied with the response from the Chief Detention Officer, the inmate is directed
to proceed to Level Three, which is an appeal to the Detention Commander.
(Defendants' Statement of Undisputed Facts, Doc. 42 at ¶ 10.)

d. The Detention Commander will review the inmate grievance at Level
Three.  The Detention Commander must respond in writing to an inmate's
grievance within 10 days (excluding weekends and holidays).  Resolution or
failure to resolve the grievance at Level Three will be recorded.  (Defendants'
Statement of Undisputed Facts, Doc. 42 at ¶ 10.)

Mr. Logue filed a grievance on December 26, 2017 at 3:58 p.m. complaining that his account was charged $111.06 for prescriptions.  He argued that since he was on Medicaid, the cost of the medication should be paid by the jail.  (Doc. 43-2 at 2.)  Officer Cooper denied the grievance on December 26, 2017 at 4:41 p.m. stating that Medicaid would not pay for his medical care while he was in jail and that the state of Montana terminates Medicaid for those incarcerated for more than 30 days.  (Doc. 43-2 at 2.)  Mr. Logue did not appeal this grievance.  (Defendants' Statement of Undisputed Facts, Doc. 42 at ¶ 16.)  Mr. Logue contends he was denied an opportunity to appeal this issue although he attempted to do so.  He also contends the medications he was charged for were from his prior incarceration between June 11, 2017 and July 7, 2017 which was less than 30-days and should have been covered by Medicaid.  (Statement of Disputed Facts, Doc. 47 at ¶ 16.)

Mr. Logue filed a grievance on December 27, 2017 at 12:58 p.m. in which he stated:

> I know that Medicaid stops when im in jail, that is why this facility must pay for medications per the Diability Act, read it,. .  I am disabled and on a fixed income, therefore by law the state or county government, must provide me with the medications that I need. otherwise you are stealing my money.  AND THE FIRST GRIEVANCE WAS BLOCKED FOR ME TO APPEAL.

(Doc. 43-3 at 2.)  Officer Cooper denied the grievance without comment on January 4, 2018 at 11:48 a.m.  Mr. Logue did not appeal the denial.  (Defendants' Statement of Undisputed Facts, Doc. 42 at ¶ 17.)

7

On January 26, 2018, at 08:59 a.m., Mr. Logue filed a grievance stating:

> On 1/22/18 I received $1,100.00 in two cashier's checks from my
> bank. I ordered store and a $20 phone card. my account balance was
> $1,238.47. I did not owe this jail or medical any money, now my
> account balance is $82.68. someone took or, stole about $1,100.00 of
> my money.

(Doc. 43-4 at 2.) Sgt. McGilvary responded on January 26, 2018 at 9:22 a.m.

stating:

> On 06-12-2017 you were transported to NV hospital for your liver.
> You stated to the officer on that date that you had been to the hospital
> before for liver failure. The money was taken due to a trip to the ER.

(Doc. 43-4 at 2.) Mr. Logue submitted an appeal at 11:18 a.m. on the same day

and the appeal was denied at 1:53 p.m. by Officer Carey who stated:

> You were received into Detention on 6/11/17 and then released on
> 7/7/17. You were not released prior to that hospital visit. It is my
> understanding that the Nurse has provided you with a copy of the bill
> to review. I spoke to you outside of your housing unit and you also
> spoke in booking to the shift Sgt regarding this matter as well. Your
> inmate account is current and reflects the amount remaining after this
> bill was paid from funds that were currently in your account.

(Doc. 43-4 at 4.) Mr. Logue did not appeal the Appeal One Response to his First

January 26, 2018 Grievance. (Defendants' Statement of Undisputed Facts, Doc. 42

at ¶ 21.)

On that same day at 3:52 p.m., Mr. Logue submitted a second grievance

stating:

> Nurse Tammy stated she just got this bill, but its from June 2017. i
> am not being treated equal violating my U.S. and State Constitutional
> Rights by taking all my money to pay a debt when other inmates only

get half their money taken to pay a debt and the jail had plenty of time
in Nov. & Dec. to notify me of this debt but, waited until I had money
sent in in January for my legal case and living expenses re: bond
hearing on 1/29/18 to sabotage me in my pursuit for liberty. and is
seen as retaliation to my civil complaints filed in justice court.  These
acts are seen as US CONST. right(s) VIOLATIONS AND I PLAN
TO TAKE LEGAL ACTIONS AGAINST NURSE TAMMY FOR
NOT BEING TREATED EQUAL IN A FEDERAL COURT.

(Doc. 43-5 at 3; Defendants' Statement of Undisputed Facts, Doc. 42 at ¶ 23.)  For

the action requested, Mr. Logue stated:  "for my money returned and to be treated

like other inmates, to be allowed to pay this bill by my insurance or, in payments

with prior notice first, not being blind-sided and robbed, and discriminated by not

being treated the same as other inmates."  *Id.*

On January 30, 2018 at 2:52 p.m., Officer Carey denied the grievance

stating, "this grievance was addressed and resolved on 1/26/18.  In Grievance

ID#709731 your objection to the answer was noted."  At 4:05 that same day, Mr.

Logue submitted his appeal stating:

This grievance has grounds based on Const. Rights Violations that
were not addressed.  The rights violated are that FCDC through Nurse
Tammy deprived me of equal protection of the law, found in the XIV
Amendment of the US CONST. BILL OF RIGHTS that basically
states that FCDC must treat me the same as other inmates, which they
did not do.

(Doc. 43-5 at 3.)  Acting Chief Detention Officer Carey responded on February 1,

2018 at 4:39 p.m. stating, "This issue has been addressed with you several times

and is resolved."  (Doc. 43-5 at 3; Defendants' Statement of Undisputed Facts,

Doc. 42 at ¶ 26.)  Mr. Logue did not appeal the Appeal One Response to his

Second January 26, 2018 Grievance to the Detention Commander.  (Defendants'

Statement of Undisputed Facts, Doc. 42 at ¶ 27.)  Mr. Logue was released from

FCDC on February 26, 2018 at 4:39 p.m.  (Release Sheet, Doc. 43-7 at 2.)

### D.  Analysis

The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement

states:

> [n]o action shall be brought with respect to prison conditions under section
> 1983 of this title, or any other Federal law, by a prisoner confined in any jail,
> prison, or other correctional facility until such administrative remedies as are
> available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002);

*Booth v. Churner*, 532 U.S. 731, 741 (2001).  This means a prisoner must

"complete the administrative review process in accordance with the applicable

procedural rules, including deadlines, as a precondition to bringing suit in federal

court."  *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  Exhaustion is mandatory.

*Booth*, 532 U.S. at 741; *Jones v. Bock*, 549 U.S. 199, 211 (2007).  Under the

PLRA, prison regulations define the exhaustion requirements.  *Jones*, 549 U.S. at

218.

The defendant bears the ultimate burden of proving failure to exhaust.  *See*

*Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005).  If the defendant initially

shows that (1) an available administrative remedy existed and (2) the prisoner

failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). Once the defendant has carried that burden, the prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

"The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016) (*citing Booth*, 532 U.S., at 737-738.) Therefore, inmates must exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (*quoting Booth*, 532 U.S., at 738, 121 S.Ct. 1819.)

There are three general situations that can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S.Ct. at 1859.

11

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id.* (internal quotation marks and alteration omitted). However, the procedures need not be sufficiently "plain" as to preclude any reasonable mistake or debate with respect to their meaning. *Id.* Therefore, when an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion. *Id.*

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id.* at 1860. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that

12

he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

As an initial matter, Mr. Logue is subject to the exhaustion requirements of the PLRA even though he was released after the incidents at issue in this lawsuit because he was incarcerated when he filed his civil complaint in this Court. *Jackson v. Fong*, 870 F.3d 928, 937 (9th Cir. 2017) (the plaintiff's incarceration status when he filed the operative complaint is what determines whether the exhaustion requirements of the PLRA apply).

Mr. Logue first contends that he was blocked from appealing the denial of his December 26, 2017 Grievance seeking the return of his $111.06 and so he filed the second grievance on December 27, 2017 again seeking the return of his $111.06. That grievance was denied on January 4, 2018 but Mr. Logue did not file an appeal of that Level One response. He argues that he was denied an opportunity to appeal that issue on or after January 4, 2018 when FCDC responded and since he was denied the opportunity to appeal the first grievance, he thought it was futile to appeal the second grievance denial. He also argues that he observed from his attempts to utilize the FCDC grievance process that it was a futile attempt to achieve a positive result. (Doc. 46-1 at 4.) But a prisoner may not avoid the exhaustion requirement simply because he feels his request for a remedy will be denied by prison officials or is futile for some other reason. *See Booth v. Churner*,

532 U.S. 731, 741 (2001) ("we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). This is insufficient to demonstrate exhaustion.

Mr. Logue then argues that he believed he did appeal to Commander (Root) Grande before his release on the morning of February 6, 2018 but he was not in custody upon her response. He believes the appeal was deleted upon his release. But he admits that he does not have his records and does not remember precisely. This is insufficient to demonstrate exhaustion.

Mr. Logue, however, argues that he did not have sufficient time to appeal the February 1, 2018 response in that he was released within 98 hours of that response. (Doc. 47 at 2.) He claims he then brought his issue before the Detention Commander through Disability Rights Montana. He has presented evidence that he sought assistance regarding his funds after his release from Disability Rights Montana thus giving FCDC a full and fair opportunity to take appropriate measures. (Doc. 46-1 at 4-5.)

Mr. Logue submitted evidence that he, with the help of individuals at Disability Rights Montana, attempted to continue the grievance process in an attempt to recover those funds. On March 6, 2018, Christine Simonich from Disability Rights Montana wrote to Commander Root at FCDC seeking an opportunity to discuss the taking of Mr. Logue's funds and an opportunity to

review documentation regarding those takings.  (Doc. 46-3 at 2.)  Ms. Simonich

followed up with letters on March 23, 2018 and April 11, 2018 seeking the return

of Mr. Logue's funds.  (Doc. 46-3 at 3-4.)  On April 24, 2018, Commander Root

responded and explained that inmates are ultimately responsible for any bills from

pre-existing conditions even after the Detention Center has paid the bill.  (Doc. 46-

3 at 6.)

Defendants argue that this informal communication does not satisfy the

FCDC grievance process and the obligations of the PLRA because informal

communications are not part of the FCDC grievance process.  (Reply, Doc. 52 at 4

citing Grande Affidavit, Doc. 43 at ¶ 19.)

It is undisputed that Mr. Logue was released before the grievance process

was complete.  Defendants argue that Mr. Logue had five days prior to his release

to conduct a Level Three appeal.  (Reply, Doc. 52 at 6.)  But the FCDC grievance

policy does not provide a time limit for filing an appeal and Mr. Logue attempted

to continue the grievance process after his release with the assistance of Disability

Rights Montana.

The Ninth Circuit has not specifically ruled on whether the release of an

inmate from a particular institution renders administrative remedies at that

institution unavailable.  Other courts that have considered the issue and focused on

whether the relevant procedures of the particular institution render the

administrative remedies unavailable. *See Pauls v. Green*, No. 4:08–cv–00337–
BLW, 2011 WL 5520645, at *3, 2011 U.S. Dist. LEXIS 131528, at *7 (D. Idaho
Nov. 14, 2011) (noting, in the context of transfer, that the "analytical starting point
is the . . . jail's regulations").

Courts have also considered whether the institution has explicit procedures
allowing for grievances to be filed in similar circumstances. *See e.g., Flournoy v.
Navarro*, 2008 U.S. Dist. LEXIS 120742, 2008 WL 4184650, at *7 C.D. Cal. Sept.
10, 2008 ("[A]dministrative remedies relating to her grievance at the Jail were
indisputably still 'available' to her, in that under Jail policy, there is no time limit
on filing and appealing grievances, even after release."); *Howard v. Baca*, 2011
U.S. Dist. LEXIS 132553, 2011 WL 5570086, at *5 (C.D. Cal. Sept. 27, 2011)
(holding that plaintiff who was transferred out of county jail was still required to
exhaust administrative remedies because it was the jail's "policy to treat
complaints from released inmates according to the same guidelines, requirements,
and procedures as inmates in custody").  Courts have also considered evidence of
grievances being accepted under similar circumstances. *See e.g., Napier v. Laurel
Cty.*, 636 F.3d 218, 224 (6th Cir. 2011) ("noting that, "[m]ost powerfully, the
defendants submitted evidence that a different prisoner has, in fact, filed a
grievance . . . while incarcerated elsewhere in the state.").

Defendants have the burden of providing evidence that remedies were still available even after Mr. Logue's release in the context of the jail's procedures.  *See e.g., English v. Clark Cty. Jail*, 2015 U.S. Dist. LEXIS 49159 at *6 (W.D. Wash. Jan. 29, 2015) (finding that release rendered administrative remedies unavailable because defendants made no showing that administrative remedies were available); *Wright v. Smith*, 2013 WL 3787528, at *7, 2013 U.S. Dist. LEXIS 100815, at *22 (E.D. Cal. July 18, 2013) (finding that defendants did not meet their burden to show remedies were available where they had provided no evidence that plaintiff had means to continue an appeal upon transfer).

Defendants contend that Mr. Logue's informal communications with Commander Grande after his release are not part of the FCDC grievance process, but they do not explain how Mr. Logue was supposed to complete the grievance process after he was released from incarceration.  They have the burden and they provided no evidence that Mr. Logue had the means to continue an appeal after his release.  In contrast, Mr. Logue has presented evidence that he attempted to appeal to the Detention Commander after his release.  Commander Root again denied his requests for the return of his funds.

The Court finds that Defendants failed to show that the grievance process was available to Mr. Logue once he was released.  The unavailability of the grievance process excuses Mr. Logue's failure to exhaust administrative remedies

on the claims he raised in his grievances.  Defendants' exhaustion Motion for

Summary Judgment should be denied.

## II.  MOTION TO AMEND

Rule 15(a) is very liberal and the "court should freely give leave when

justice so requires."  Fed.R.Civ.P. 15(a)(2); *AmerisourceBergen Corp. v. Dialysis*

*West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (*quoting* Fed. R. Civ. P. 15(a)).

However, courts "need not grant leave to amend where the amendment:  (1)

prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue

delay in the litigation; or (4) is futile."  *AmerisourceBergen Corp.*, 465 F.3d at 951.

The burden to demonstrate prejudice falls upon the party opposing the amendment.

*DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).  Absent

prejudice, or a strong showing of any of the remaining three factors, a presumption

exists under Rule 15(a) in favor of granting leave to amend.  *Eminence Capital,*

*LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

In his July 17, 2019 Superseding Findings and Recommendations, Judge

Lynch noted:

> Logue was twice advised about amending his allegations.  *See* Order (Doc.
> 7); Order (Doc. 16).  In addition to his original complaint, he has made at
> least five attempts (Docs. 6, 9, 13, 17, 19) to amend his pleadings.  No
> additional opportunities need be extended.

(Doc. 21 at 2.)  As such, the Court finds that Mr. Logue's proposed amendment are

sought in bad faith.

18

In addition, Mr. Logue's proposed amendments are futile.  He continues to seek to add his court appointed attorneys as defendants even though there is a pending recommendation to dismiss them.  (Doc. 21.)  The same analysis applies to the Flathead County Public Defenders' Office.  Nothing in Mr. Logue's proposed amended complaint changes that analysis.

Mr. Logue also seeks to add Nurse Tammy Bowen but states no specific allegations against Nurse Bowen.  Similarly, he seeks to add Flathead County with regard to the funds taken from his inmate account.  It is well-established that a local government may not be sued under a theory of vicarious liability for injuries inflicted by its employees or agents.  *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978).  Instead, under *Monell*, a municipality may only be held liable under § 1983 when "(1) the constitutional tort was the result of a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority delegated that authority to, or ratified the decision of, a subordinate."  *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008)."  Mr. Logue has brought no such allegations against Flathead County.

Finally, he also seeks to add the State of Montana with regard to the taking of his funds.  The Eleventh Amendment bars suit in federal court against a state

19

absent a valid abrogation of immunity by Congress or an express waiver of immunity by the State. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267–268 (1997); *Edelman v. Jordan*, 415 U.S. 651, 653 (1974); *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). The State of Montana has waived immunity only for tort claims brought in state court. Mont. Code Ann. § 2-9-101 et seq. Thus, the State of Montana has Eleventh Amendment immunity from suit in federal court. In addition, states are not "persons" subject to suit for money damages under section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65, 71 (1989). Therefore, Mr. Logue's claims against the State of Montana cannot proceed.

The motion to amend should be denied.

## III.  MOTIONS FOR SUBPOENAS

Mr. Logue has filed three motions for subpoenas. He filed two motions for subpoenas directed to the Flathead County Detention Center's Financial Administrator for a record of the amount of funds of which FCDC administratively deprived inmates. (Docs. 57, 75.) The Court will not issue subpoenas for documents under the control of the named Defendants as there are other methods of discovery which will not require Court intervention or the expenditure of governmental resources. The authorization of a subpoena duces tecum requested by a forma pauperis litigant is subject to limitations. *Alexander v. California Dep't*

*of Corrections*, 2010 WL 5114931 (E.D.Cal 2010).  Because personal service of a subpoena duces tecum is required under Rule 45(b), "[d]irecting the Marshal's Office to expend its resources personally serving a subpoena is not taken lightly by the court."  *See Frazier v. Redding Police Dep't*, 2012 WL 5868573 (E.D.Cal.) (citation omitted).

If Mr. Logue has provided his disclosures required in paragraph I(B)(1) of the Court's September 16, 2019 Scheduling Order (Doc. 36), he may serve discovery requests, without subpoena, upon any of the named parties.  *See* Fed.R.Civ.P. 33(a)(1) ("a party may serve on any other party no more than 25 written interrogatories"); Fed.R.Civ.P. 34(a) ("[a] party may serve on any other party a request" for the production of documents); Fed.R.Civ.P. 36(a)(1) ("a party may serve on any other party a written request to admit").  Given that there are other methods of obtaining the information sought by Mr. Logue without Court intervention and without expending the resources of the United States Marshal's Office, the request for a subpoena for documents from FCDC will be denied.

Mr. Logue also filed a motion for a subpoena to be issued to Christine Simonich and Supervising Attorney Roberta Zender for a written report and expert testimony and to have these two witnesses at any deposition hearing that is scheduled by the Court.  (Doc. 63.)  This is not a proper use of Rule 45 of the Federal Rules of Civil Procedure.  Unretained expert witnesses may not be

21

subpoenaed and Rule 45(d)(3)(B)(ii) of the Federal Rules of Civil Procedure

provides that the court may quash or modify a subpoena if it requires "disclosing

an unretained expert's opinion. . . ."  Fed. R. Civ. P. 45(d)(3)(B)(ii).

Mr. Logue may subpoena witnesses for trial or depositions, but he must

tender fees for one day's attendance and the mileage allowed by law.  Each witness

is entitled to $40.00 plus mileage for the distance between his or her home or work

address and the place of their testimony at a rate of $0.58 per mile.  *See* 28 U.S.C.

§ 1821(b), (c)(2), (f); *Tedder v. Odel*, 890 F.2d 210 (9th Cir. 1989).

Mr. Logue may seek a subpoena for the production of documents already in

existence, electronically stored information, or tangible things at a place within 100

miles of where the person resides, is employed, or regularly transacts business in

person.  Fed.R.Civ.P. 45(c)(2).  As currently stated, however, Mr. Logue's motion

for subpoena for the Disability Rights of Montana employees (Doc. 63) will be

denied.

## IV.  MOTION FOR SUPPLMENTAL JURISDICTION

Mr. Logue moves the Court pursuant to 28 U.S.C. § 1367(a) for

Supplemental Jurisdiction of Montana's Eleventh Judicial District Court's Case

No:  DV-19-843(B)--Mr. Logue's Petition for Post-Conviction Relief.  (Doc. 58.)

Mr. Logue contends the issues in his petition for post-conviction relief (ineffective

assistance of counsel) are the same as those raised herein for legal malpractice.  As

set forth, above, however, the only claims before this Court are Mr. Logue's due process claims regarding the taking of his inmate funds for medical care costs.  The Court has recommended that Mr. Logue's motion to amend to include legal malpractice claims be denied.

Further, 28 U.S.C. § 1367 does not allow a federal court to take jurisdiction over a state court.  It only allows a federal court to exercise supplemental jurisdiction over state law claims so related to the claims in the action that they form part of the same case or controversy.  Mr. Logue is not seeking to just adjudicate state law claims in this case, he is asking the Court to take jurisdiction over a case currently pending in state court which this Court will not do.

The motion for supplemental jurisdiction will be denied.

## V.     IMPROPER FILINGS

Mr. Logue has filed a number of motions which do not comport to the Court's Local Rules and the Federal Rules for Civil Procedure.  Mr. Logue's motion to oppose immunity defenses does not seek any specific relief but rather seems to be a response to Defendants' immunity defense raised in their response to Mr. Logue's motion for summary judgment.  The Court will consider Mr. Logue's arguments regarding immunity, but the Clerk of Court will be directed to terminate the motion as it is not a proper motion.

Mr. Logue's motion for leave to submit statement to the Court and to file extra-rule brief is simply yet another sur-reply filed in violation of the Court's Local Rules.  While the Court has denied Defendants' Motion to Strike Mr. Logue's first sur-reply, it will not continue to accept additional filings on this issue. The motion has now been resolved.  The Motion for Leave (Doc. 80) will be denied.

Based upon the foregoing, the Court issues the following:

## ORDER

1.  Defendants' Motion to Stay Proceedings Pending Resolution of Defendants' Motion for Summary Judgment (Doc. 53) is DENIED AS MOOT.

2.  Mr. Logue's Motion for Subpoenas (Doc. 57) is DENIED.

3.  Mr. Logue's Motion for Supplemental Jurisdiction of Montana's Eleventh Judicial District Court Case No. DV-19-843 (Doc. 58) is DENIED.

4.  Defendants' Motion for Telephonic Status Conference (Doc. 61) is DENIED AS MOOT.

5.  Mr. Logue's Motion for Subpoenas (Doc. 63) is DENIED.

6.  The Clerk of Court is directed to terminate Mr. Logue's Motion to Oppose any Claims by Defendants of Immunity Defense(s) (Doc. 68) as it is not a proper motion.

7.  Defendants' Motion to Strike "Plaintiff Clarence Louges's Response to Defendant's Reply Brief in Support of Motion to Oppose Defendant's Motion for summary Judgment Plaintiff's Reply Brief" (Doc. 72) is DENIED.

8.  Mr. Logue's Motion for a Subpoena for Particular Records from Flathead County Detention Center (Doc. 75) is DENIED.

9.  Mr. Logue's Motion for Leave to Submit Statement to the Court and to File Extra-Rule Brief (Doc. 80) is DENIED.

Further, the Court issues the following:

## RECOMMENDATIONS

1.  Defendants' Motion for Summary Judgment (Doc. 40) should be DENIED.

2.  Mr. Logue's Motion for Leave to Amend (Doc. 56) should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[2]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

---

[2]Mr. Logue is entitled to an additional three days after the fourteen-day period would otherwise expire to file his objections.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P.  4(a), should not be filed until entry of the District Court's final judgment.

DATED this 14th day of November, 2019.


*/s/ John Johnston*
John Johnston
United States Magistrate Judge